## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| **EMILY FRANCES FRAGALA WYANT, ET AL.** | * | **CIVIL ACTION NO.  14-0422** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **NATIONSTAR MORTGAGE, LLC, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## <u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 15], filed by defendant Shapiro & Daigrepont, LLC.  The motion is opposed. For reasons explained below, it is recommended that the motion to dismiss be GRANTED IN PART and DENIED IN PART.

## <u>Background</u>

The instant suit is the unfortunate byproduct of a mortgage payoff gone terribly wrong.  In mid-2013, Emily Frances Fragala Ivy Wyant and her parents, Inez Tannehill Fragala and John Fragala (collectively, the "Fragalas"), sold their home in Mangham, Louisiana.  (Compl., ¶ 12). The closing was held on May 30, 2013, whereupon the Fragalas, via their attorney, forwarded a $69,505.79 cashier's check to their mortgage lender, Bank of America, N.A. ("BOFA") in a fateful attempt to discharge the mortgage on their home.  *See* Compl., ¶¶ 13-14.  BOFA received the funds three days later on June 2, 2013.  *Id*., ¶¶ 15-16.  Unbeknownst to the Fragalas or their closing attorney, however, BOFA purportedly had assigned the loan to Nationstar Mortgage ("Nationstar").  *Id.*, ¶ 18.  As a result, BOFA duly forwarded the funds to Nationstar on June 5,

2013.  *Id.*, ¶ 20.

On July 16, 2013, the Fragalas first learned that neither BOFA, nor Nationstar had properly applied the funds to cancel the loan note and mortgage.  *Id.*, ¶¶ 21, 25.  Instead, Nationstar notified the Fragalas that their loan was delinquent because they had missed their payments for June and July 2013.  *Id.*, ¶¶ 23-26.  Nationstar also proceeded to assess charges against the Fragalas' account, thereby inflating their previous payoff balance.  *Id.*, ¶ 24.  In the weeks that followed, the Fragalas communicated with BOFA and Nationstar in an unsuccessful attempt to remedy the mixup and to obtain the cancellation of their loan note and mortgage.  *Id.*, ¶ 28.

Over the next several months, Nationstar continued to dun the Fragalas, write collection letters, and make harassing collection calls that impaired the Fragalas' reputations and well-beginning.  *Id.*, ¶ 31.  In September 2013, Nationstar enlisted the assistance of the Shapiro and Daigrepont LLC ("S&D") law firm.  *Id.*, ¶ 33.  On September 16, 2013, S&D wrote a letter to the Fragalas stating that they owed $70,215.58, and that their residence was in a foreclosure proceeding.  *Id.*, ¶¶ 37-38.  On different dates in October 2013, Nationstar inconsistently advised the Fragalas that they owed $74,383.30 and $68,895.  *Id.*, ¶¶ 47-49.

By all accounts, the impasse did not improve.  Accordingly, on January 10, 2014, the Fragalas commenced the instant suit in the 5th Judicial District Court for the Parish of Richland, State of Louisiana, against Nationstar, BOFA, and S&D.  They set forth a comprehensive list of claims against defendants in search of declaratory and injunctive relief, plus actual, mental, statutory, exemplary, and punitive damages.  They also requested an award for costs and attorney's fees.

On February 20, 2014, Nationstar removed the case to federal court on the basis of

2

federal question jurisdiction.  BOFA and Nationstar each answered the complaint.  On March 10, 2014, however, S&D filed the instant motion to dismiss for failure to state a claim upon which relief can be granted.  Briefing is complete.  The matter is before the court.

### Discussion

## I.   12(b)(6) Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal, supra*.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal, supra* (citation omitted).  A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly, supra*.  Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision."  *Gilbert v. Outback*

*Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).  The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Gilbert, supra*.[1]  Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id.*  In addition, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Rule 9(b) requires that circumstances constituting fraud or mistake be alleged with particularity.  Fed.R.Civ.P. 9(b).  The particularity demanded by Rule 9(b) supplements Rule 8(a)'s pleading requirement.  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).  Allegations of fraud under Louisiana law asserted in federal court implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080 (E.D. La. Nov. 20, 2008).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed.R.Civ.P. 9(b).  What constitutes sufficient particularity for Rule 9(b) varies with the facts of each case.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).  At minimum, however, Rule 9(b) requires a plaintiff pleading

---

[1]  "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."  *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

fraud to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002) (quoted sources and internal quotation marks omitted).   Nonetheless, the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Grubbs*, 565 F.3d at 190.

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).  Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

## II.    Analysis

Plaintiffs enumerate approximately nine overlapping allegations of fault against S&D. (Compl., ¶ 64).  The claims may be grouped into three broad categories:  a) negligence and intentional tort/fraud claims; b) violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R. S. 51:1401, *et seq*.; and c) violations of the Federal Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692, *et seq*.  The court will address each in turn.  Before doing so, however, the court will pause to review the substance of S&D's limited interaction with the Fragalas.

Plaintiffs allege in their complaint that S&D wrote a "series" of collection letters to them.

(Compl., ¶ 33).  However, they detail only one occasion when S&D actually contacted them: September 16, 2013.  *Id.*, ¶¶ 37-39.  In their opposition to the motion to dismiss, plaintiffs adduced copies of two distinct letters, on S&D letterhead, both dated September 16, 2013, and purportedly sent by S&D separately to Emily Fragala Wyant and Inez Fragala at multiple addresses.  (Pl. Opp. Memo., Exh. 2).[2]

One letter informed the Fragalas that,

[t]he law firm of [S&D] has been retained to initiate foreclosure proceedings to foreclose the mortgage on your property.  The following information is provided to you as required by the Federal Fair Debt Collections Practices Act:

1.   As of September 13, 2013, our client has advised us that the amount of the debt is $70,215.58.

2.   The creditor to whom the debt is owed is [Nationstar].

3.   The Fair Debt Collections Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this letter . . .

5.   The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date you receive this letter before we initiate foreclosure proceedings to foreclose on your mortgage.  In the event we do initiate foreclosure proceedings to foreclose on your mortgage, within thirty (30) days from the date you receive this letter, you still retain the right to dispute the debt, or any portion thereof and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor, our client [Nationstar].

6.   If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date you receive this letter, the Fair Debt Collection Practices Act requires us to suspend our efforts to foreclose the mortgage on your property, even if we have already initiated

---

[2]  The court may consider these letters because they are referenced in plaintiffs' complaint and remain central to at least some of their claims.  *Collins, supra.*

foreclosure proceedings, until we mail you the information
validating the debt and/or until we provide you with the name of
the original creditor.

Because of the interest, late charges and other charges that may vary from day to
day, the amount due on the day you pay may be greater.  Hence, if you pay the
amount shown above, an adjustment may be necessary after we receive your
check, in which event we will inform you before depositing the check for
collection. . . .

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT,
YOU ARE ADVISED THAT THIS OFFICE IS DEEMED TO BE A DEBT
COLLECTOR.  ANY INFORMATION OBTAINED WILL BE USED FOR
THAT PURPOSE.**

**NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS PRACTICES
ACT, 15 U.S.C. SECTION 1692, et seq.**

(Sept. 16, 2013, Letter from S&D to the Fragalas; Pl. Opp., Exh. 2).

The second letter from S&D advised the Fragalas that

**YOUR MORTGAGE LOAN HAS BEEN
REFERRED TO OUR FIRM FOR FORECLOSURE**

Our client, [Nationstar] has referred your loan to us for foreclosure.  Despite this
action, our client has requested that we inform you that you may still have
foreclosure prevention alternatives available to you to avoid the disruption and
damage to your credit that a foreclosure sale can cause – **BUT YOU MUST ACT
QUICKLY!**

(Sept. 16, 2013, Letter from S&D to the Fragalas; Pl. Opp., Exh. 3).

This single-page letter included bolded subheadings stating that **"YOU MAY STILL HAVE**

**ALTERNATIVES**" and "**TIME IS OF THE ESSENCE**." *Id.*  The letter concluded with,

"**IMPORTANT NOTE:  Please be advised that unless you receive confirmation in writing**

**to the contrary, the foreclosure process will continue during the review of any foreclosure**

**alternatives.   Should you receive such confirmation, please forward such writing to this**

**office immediately**." *Id.*

On September 19, 2013, John B. Hoychick, an attorney for Emily Fragala Ivy, wrote a

7

"To Whom it May Concern" letter to S&D advising the firm that his client had received S&D's September 16, 2013, letter.  (Sept. 19, 2013, Letter from John Hoychick to S&D; Pl. Opp. Exh. 4).[3]  He explained that his client recently had sold the property in question and sent a payoff check to Nationstar.  *Id*.  Mr. Hoychick closed his letter by stating that "[i]f a foreclosure lawsuit is filed on the property in question (which she no longer owns) she will definitely file a lawsuit against Nationstar for its bad faith practices."  *Id*.

Plaintiffs do not allege that S&D further communicated with them after their initial communication and after receipt of Mr. Hoychick's letter.  There are no allegations that S&D foreclosed on the property in question.

a)    <u>Negligence and Intentional Tort/Fraud Claims</u>

In Louisiana, it is clear that "an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf.  A non-client, therefore, cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation." *Montalvo v. Sondes*, 637 So. 2d 127, 130 (La. 1994) (citing *Penalber v. Blount,* 550 So.2d 577 (La.1989)).[4]  Nonetheless, an attorney may be personally liable to a non-client for his or her own intentional, tortious conduct.  *Id*.  To state a claim, however, the complaint must allege *facts* showing that the attorney acted maliciously or with an intent to harm the adverse party.  *Id*.  An

---

[3]  The court may consider the letter because it is referenced in plaintiffs' complaint and remains central to at least some of their claims.  *Collins, supra.*

[4]  In their memoranda, both sides address plaintiffs' state law claims in terms of Louisiana law, and thus implicitly agree that the substantive law of Louisiana applies to these issues.  *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed)

attorney's negligent failure to investigate a claim before filing suit does not suffice.  *See Montalvo, supra*.

Applying the foregoing considerations here, the court observes that plaintiffs' complaint does not contain any facts sufficient to demonstrate that S&D intended to harm them or that it acted maliciously when it sent them the September 16 letters.[5]  Although plaintiffs allege that the letters are rife with misrepresentations and untruths, she does not set forth any facts to indicate that *S&D knew* that the facts were false as required to show that S&D acted maliciously or with an intent to cause injury.  In fact, many of the inaccuracies claimed by plaintiffs are not supported by the actual text of the letters themselves.  For instance, plaintiffs allege that S&D falsely stated that the "subject residence and related loan and mortgage were now in a foreclosure proceeding." (Compl., ¶ 38).  A plain reading of the letters, however, reveals nothing of the sort.  One letter unambiguously states that a foreclosure proceeding was a possible, future consequence: "*[i]n the event we do initiate* foreclosure proceedings to foreclose on your mortgage, within thirty (30) days from the date you receive this letter . . ." (Sept. 16, 2013, Letter from S&D to the Fragalas; Pl. Opp., Exh. 2).  Similarly, the second letter informs the Fragalas that Nationstar had referred the loan to S&D for foreclosure, but that the Fragalas still had time to avoid a foreclosure sale. (Sept. 16, 2013, Letter from S&D to the Fragalas; Pl. Opp., Exh. 3).  Nowhere in the letter does it state that S&D already had initiated a foreclosure proceeding.  Wyant's attorney acknowledged as much in his letter to S&D, a copy of which he also sent to Wyant.  *See* Sept. 19, 2013, Letter from John Hoychick to S&D; Pl. Opp. Exh. 4.

---

[5]  The court notes that although a party is excused from pleading intent, malice, and knowledge under Rule 9's *elevated* pleading standard, the party still must plead conditions of the mind under the less rigid — but still present — strictures of Rule 8.  *Iqbal*, 556 U.S. at 686-87 (citation omitted).

Plaintiffs further contend that S&D "falsely suggested" that they were Louisiana attorneys and "falsely implied" that the firm could take legal action in Louisiana.  (Compl., ¶ 39).  Prior to September 16, 2013, however, at least two attorneys listed on S&D's letterhead were (and still are) admitted to practice in the United States District Court for the Western District of Louisiana: Penny Daigrepont and Skye Prince.[6]  As such, they are members in good standing of the bar of the Supreme Court of Louisiana, and therefore, authorized to practice law in this state.  LR 83.2.2.  Plaintiffs further allege that S&D misrepresented the nature of its business.  However, S&D truthfully informed the Fragalas that it was a law firm, and that pursuant to the FDCPA, it was considered a debt collector.  (Sept. 16, 2013, Letter from S&D to the Fragalas; Pl. Opp., Exh. 3).  The court does not perceive any material misrepresentations in those statements.

The sole, potential inaccuracies that the court discerns from S&D's letters are S&D's representations that plaintiffs still owed a balance on the loan, the amount of that balance, and possibly whether Nationstar was the creditor on the loan.  However, the complaint does not contain any facts to suggest that S&D purposefully or knowingly misrepresented those facts.  To the contrary, once Wyant's attorney advised S&D on September 19, 2013, that Wyant's client(s) had paid off the loan, there are no allegations of any further communications or collection efforts by S&D.  Clearly, if S&D had been motivated by ill intentions, it would not have been dissuaded by a single letter from the debtor's attorney.

Plaintiffs' allegations also do not suffice to state a claim for intentional infliction of emotional distress.  In defining conduct which is prohibited by this tort, the Supreme Court stated that,

---

[6] A court may take judicial notice of its own records.  *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981).

10

> [t]he conduct must be so outrageous in character, and so extreme in
> degree, as to go beyond all possible bounds of decency, and to be
> regarded as atrocious and utterly intolerable in a civilized
> community.  Liability does not extend to mere insults, indignities,
> threats, annoyances, petty oppressions, or other trivialities.
> Persons must necessarily be expected to be hardened to a certain
> amount of rough language, and to occasional acts that are definitely
> inconsiderate and unkind.  Not every verbal encounter may be
> converted into a tort; on the contrary, some safety valve must be
> left through which irascible tempers may blow off relatively
> harmless steam . . .

*White v. Monsanto, Co.*, 585 So.2d 1205, 1209 (La. 1991) (citations omitted).

S&D's letters do not rise, or rather sink, to this level.

At best, then, plaintiffs' allegations suggest no more than that S&D negligently failed to
investigate the file before sending the letters to plaintiffs.  These allegations, of course, do not
suffice to state a claim against S&D for malpractice or breach of professional duty.  *See*
*Morshaeuser v. Citimortgage, Inc.*, Civ. Action No. 12-2210, 2012 WL 5289383 (E.D. La. Oct.
24, 2012) (allegations that law firm ran a "foreclosure mill" and acted carelessly in aiding their
client in the foreclosure process does not suffice to state a claim); *Brooks v. Flagstar Bank, FSB*,
Civ. Action No. 11-67, 2011 WL 2710026 (E.D. La. July 12, 2011) (law firm's representation of
client in foreclosure proceeding did not give rise to duty of good faith and fair dealing in favor of
non-client/debtor); *Filcher v. BAC Home Loan Servicing, LP*, Civ. Action No. 10-1902 (E.D. La.
Nov. 17, 2010 [doc. # 24]) (no claim against law firm for negligence, breach of duty of good
faith and fair dealing as a result of filing an executory process proceeding against plaintiffs where
complaint did not include any facts to show that the law firm acted with malice).

Insofar as state law permits plaintiffs to assert other tort-based claims against an opposing
law firm such as S&D, those claims fare no better.  Under Louisiana law, the elements of a claim
for delictual fraud or intentional misrepresentation include:  "(a) a misrepresentation of a material

fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant

injury." *Guidry v. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999) (citations omitted).

Similarly, to set forth a claim for negligent misrepresentation:

> (1) there must be a legal duty on the part of the defendant to supply correct
> information; (2) there must be a breach of that duty, which can occur by omission
> as well as by affirmative misrepresentation; and (3) the breach must have caused
> damages to the plaintiff based on the plaintiff's reasonable reliance on the
> misrepresentation.

*Kadlec Medical Center v. Lakeview Anesthesia*, 527 F.3d 412, 418 (5th Cir. 2008) (citation

omitted) (citation omitted); La. Civ. Code Arts. 2315-2316.

Here, in contrast, plaintiffs were well aware that they had sent the requisite payoff funds

to Nationstar via BOFA, and thus, knew that the representations in S&D's letter were incorrect.

Therefore, it is hardly surprising that the complaint is devoid of any allegations that plaintiffs

*justifiably* relied on S&D's misrepresentations to their detriment, i.e. sustained a recoverable

loss.

Finally, to the extent that plaintiffs argue that S&D conspired with the other defendants to

intentionally harm them, the court notes that the complaint does not contain any factual

allegations to support a conspiracy or scheme to defraud between S&D and any of the other

defendants. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, ____ F.3d ___, 2014

WL 1796643 (5th Cir. May 6, 2014) (allegations do not make it plausible that the defendants

adopted a conscious commitment to a common scheme designed to achieve an unlawful

objective).

    b)    <u>LUTPA</u>

The LUTPA declares that "[u]nfair methods of competition and unfair or deceptive acts

or practices in the conduct of any trade or commerce" are illegal.  La. R.S. 51:1405.

Furthermore, the "LUTPA grants a right of action to any person, natural or juridical, who suffers

an ascertainable loss as a result of another person's use of unfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce." *Cheramie*

*Services, Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1057 (La. 2010).  There is no

limitation on those who may assert a LUTPA cause of action.  *Id*.

To recover under LUTPA, a plaintiff must show that "the alleged conduct offends

established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially

injurious." *Quality Envtl. Processes, Inc v. I.P. Petroleum Co., Inc.*, ___ So.3d ___, 2014 WL

1800081(La. 5/7/14) (citation omitted).  In addition, "the range of prohibited practices under

LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar

conduct, and not mere negligence." *Id*.  (citations and internal quotation marks omitted); *see also*

*Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) (LUTPA does not redress acts

of negligence or breach of contract).

Here, the court reiterates that the Fragalas' complaint does not set forth any facts to show

that S&D's alleged misrepresentations were anything more than negligent.  *See* discussion,

*supra*.  Further, the Fragalas do not explain how S&D's alleged LUTPA violation caused them

an ascertainable loss when they already were aware of the inaccuracies in S&D's letters, and

when they were in consultation with an attorney of their own.

    c)    FDCPA

Congress enacted the FDCPA in an effort to "eliminate abusive debt collection practices

by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action

to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Any debt collector

who fails to comply with the FDCPA's provisions is civilly liable for actual damages sustained

13

by the individual debtor, additional damages not greater than $1,000, plus costs and reasonable

attorney's fees.  15 U.S.C. § 1692k(a).  Nonetheless, a "debt collector may not be held liable in

any action brought under this subchapter if the debt collector shows by a preponderance of

evidence that the violation was not intentional and resulted from a bona fide error

notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15

U.S.C. § 1692k(c).

To prevail under the FDCPA, plaintiffs must show that:  "(1) [they have] been the object

of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined

by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the

FDCPA."  *Johnson v. Attorney Office of Newman, Mathis, Brady & Spedale*, Civ. Action No. 12-

706, 2013 WL 6834381 (M.D. La. Dec. 23, 2013) (citation omitted).  For purposes of its motion,

S&D contests solely the second and third elements of plaintiff's cause of action.  The court will

address each in turn.

    1)      <u>Plaintiffs Plausibly Allege that S&D is a Debt Collector</u>

Under the FDCPA, a debt collector is

> any person who uses any instrumentality of interstate commerce or the mails in
> any business the principal purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or indirectly, debts owed or due
> or asserted to be owed or due another. . . . For the purpose of section 1692f(6) of
> this title, such term also includes any person who uses any instrumentality of
> interstate commerce or the mails in any business the principal purpose of which is
> the enforcement of security interests.

15 U.S.C. § 1692a(6).

Thus, § 1692a(6)'s general definition recognizes two categories of debt collector:  those who

collect debts as their "principal purpose," and those who do so "regularly."  *Hester v. Graham,*

*Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008) (unpubl.).[7]  "[A] person may regularly render debt collection services, even if these services are not a principal purpose of his business." *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997).  In addition, "[a]ttorneys qualify as debt collectors for purposes of the FDCPA when they regularly engage in consumer debt collection, such as litigation on behalf of a creditor client."  *Hester, supra*  (citing *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 1493 (1995)).  Whether a party "regularly" attempts to collect debts is determined by the volume or frequency of its debt-collection activities.  *Brown*, 243 F. App'x at 35 (citation omitted).  It is a party's general, not specific, debt collection activities that determine whether the party meet the statutory definition of a debt collector.  *Kaltenbach*, 464 F.3d at 529 (citing 15 U.S.C. § 1692a(6).  However, there is no bright-line rule for determining when an attorney or law firm "regularly" collects or attempts to collect debts.  *Hester, supra*.[8]

The undersigned observes that the two letters sent by S&D suffice to establish, at least at this stage of the proceedings, that S&D was engaged in debt collection activities.  *See e.g.,*

---

[7]  A party who satisfies § 1692a(6)'s general definition of a "debt collector" is a debt collector for the purposes of the entire FDCPA even when enforcing security interests under § 1692f(6).  *See Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006).  A foreclosure, however, is *not per se* FDCPA debt collection.  *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (unpubl.) (citing *Kaltenbach*, 464 F.3d at 527).

[8]  In conducting a debt collector inquiry, some courts consider such factors as

the number of lawsuits filed and collection letters mailed, the percentage of time debt collection activities consume, the share of total lawsuits filed that were dedicated to debt collection, the number of creditor clients and the length of the firm's relationship with them, the frequency and nature of the non-collection work in which the firm engages, and the number of firm attorneys and other employees dedicated to debt collection activities.

*Kirkpatrick v. Dover & Fox, P.C.*, Civil Action No. 13-0123, 2013 WL 5723077 (S.D. Tex. Oct. 21, 2013) (citations omitted).

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010) (letter encouraging debtor to contact the creditor to discuss debt settlement options is subject to FDCPA); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 925 (N.D. Ind. 2004) (notice advising debtor *inter alia* of the debt, the name of the creditor, various procedural protections available to debtor if she so requests, and that the correspondence was sent for purposes of collecting a debt is governed by FDCPA).

Without more, however, the two letters sent by S&D in this case do not demonstrate that S&D *regularly* engaged in debt collection. Nonetheless, the letters sent to the Fragalas from S&D and Nationstar contain cover sheets/envelopes with common markings suggestive of an automated, widespread practice. Compare Pl. Opp., Exhs. 2 & 5. Indeed, S&D's letters themselves appear to be form letters, which implies broad use by S&D.[9]

In addition, S&D admits on its website that "[o]ur knowledge and experience extends beyond the routine foreclosure process into the day to day operations of the default management industry . . ." *See* http://shapiroanddaigrepont.com (last visited on June 3, 2014).[10]  Similarly, under the heading of "Litigation," S&D emphasizes that it "recognizes the importance of identifying opportunities to reduce or resolve delinquency whenever possible." *Id*. In fact, S&D handles "thousands" of mortgage foreclosures and bankruptcy cases annually. *See* http://shapiroanddaigrepont.com/about-us/ (last visited on June 3, 2014). It is certainly plausible that S&D regularly transmits the same letters that it sent to the Fragalas to other delinquent

---

[9]  It also may be reasonably inferred from the common cover letters/envelopes that S&D provided the form letters with its letterhead and signature for Nationstar's use. *See Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1237 (5th Cir. 1997). If so, S&D is treated as a debt collector under the FDCPA, and is subject to liability for this misleading practice. *Id*. (citing 15 U.S.C. § 1692j(a) & (b) & 1692e(3)).

[10]  The court may take judicial notice of S&D's website. *See Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 491 (5th Cir. 2013) (citations omitted).

debtors.

Although overkill for the present inquiry, the court further notes that S&D's letters alternatively advised the Fragalas that S&D was a debt collector or that the communication was an attempt to collect a debt under the FDCPA.  While the court agrees with S&D that this boilerplate FDCPA disclaimer does not automatically transform S&D into a debt collector,[11] it does support plaintiffs' allegations, and renders it plausible that S&D was acting as a debt collector in connection with the letters at issue.

    2)    <u>Plaintiffs Plausibly Allege that S&D Violated the FDCPA</u>

Plaintiffs allege that S&D violated various provisions of the FDCPA in multiple respects, including, 1) falsely representing its identity and role; 2) falsely representing the sum, extent and nature of the debt; 3) imposing fraudulent and illegal charges and assessments; 4) engaging in a scheme with other debt collectors to intimidate and defraud plaintiffs; 5) transmitting false and deceiving written and verbal communications to consumers; 6) falsely reporting the status of plaintiffs' debt to consumer reporting agencies; and 7) failing to provide requisite notices in connection with the initial communication with plaintiffs.  (Compl., ¶¶ 64-69).

Plaintiffs honed their FDCPA allegations against S&D in their opposition memorandum by reciting the following FDCPA provisions,

> [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>     *    *    *
>
> (2) The false representation of--

---

[11]   *See Stamper v. Wilson & Associates, P.L.L.C.*, 09-270, 2010 WL 1408585 (E.D. Tenn. Mar. 31, 2010) (citations omitted).

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

*          *          *

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to--

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

*          *          *

(8) Communicating or threatening to communicate to any person credit information which is known *or which should be known* to be false, *including the failure to communicate that a disputed debt is disputed*.

*          *          *

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e (emphasis added).

18

Plaintiffs also recited § 1692f:

> [a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
>
> \*  \*  \*
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property . . .

15 U.S.C. § 1692f.

The court must evaluate any potential deception contained in S&D's letters under an unsophisticated or least sophisticated consumer standard. *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004) (citation omitted). Stated differently, the court must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors. *Id*. A single violation of any provision of the FDCPA suffices to establish civil liability thereunder. *Taylor*, 103 F.3d at 1238.

Plaintiffs allege in their complaint that on May 30, 2013, they paid off their mortgage with a cashier's check for $69,505.79. Therefore, S&D's subsequent representations that they still owed a debt of $70,215.58 was incorrect/false (from plaintiffs' perspective) and, in any event, inflated. Moreover, S&D's letter(s) plainly intimated that S&D intended to foreclose on plaintiffs' property if plaintiffs did not pay the $70,215.58, plus applicable interest, late charges, and other unspecified charges. Of course, S&D had no right to take possession of the property if,

as plaintiffs alleged, they had paid off the debt.[12]  In addition, S&D implied, via its threatened

foreclosure, to adversely impact plaintiffs' credit rating – clearly without disclosing that the debt

was disputed.  *See* S&D Letter; Pl. Exh. 3.

S&D contends that plaintiffs' complaint does not state a claim for *any* FDCPA violations

because plaintiffs do not include any facts to show that S&D *knowingly* violated the FDCPA.

S&D further represents that, at the time it sent the letters, it had no reason to doubt the validity of

the debt.  (S&D Reply Memo., pg. 10).  In other words, S&D acted in good faith.

Courts, however, generally refer to the FDCPA as a "strict-liability statute" that imposes

liability on debt collectors even for inadvertent violations.  *Thompson v. Diversified Adjustment

Serv., Inc.*, Civ. Action No. 12-922, 2013 WL 3973976 (S.D. Tex. July 31, 2013) (and cases

cited therein); *see also Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270-71 (11th Cir. 2011).[13]

Indeed, an amount misstated by the debt collector "need not be deliberate, reckless, or even

negligent to trigger liability—it need only be false."  *Barlow v. Safety Nat. Cas. Corp.*, Civ.

Action No. 11-236, 2012 WL 1965417 (M.D. La. May 31, 2012) (citation omitted).[14]  In

addition, the debtor need not incur actual damages to support a claim under the FDCPA.  *Miller

v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) (and cases cited therein).

---

[12]  These facts potentially support liability against S&D under 1692f(6) because, in
Louisiana, a foreclosure on a mortgage that contains a "confession of judgment" clause, is
considered an "executory" or non-judicial proceeding.  *See Alphonse v. Arch Bay Holdings,
L.L.C.*, 548 F. App'x 979, 980 (5th Cir. 2013) (unpubl.) (citations omitted).

[13]  Even the circuit court decisions cited by S&D recognize that the FDCPA imposes strict
liability.  *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175-76 (9th Cir.
2006); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004).

[14]  As the *Thompson* court recognized, several of the FDCPA's proscriptions explicitly
require a showing of intent.  *See Thompson, supra*.  The violations raised by the Fragalas,
however, do not contain an intent requirement.

Nevertheless, a debt collector such as S&D may avoid liability under the FDCPA if it demonstrates by a "preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error. *Taylor*, 103 F.3d at 1239 (citing 15 U.S.C. § 1692k(c)). This is an affirmative defense, however, and S&D has not made the requisite showing in this 12(b)(6) motion.

The foregoing notwithstanding, it is manifest that plaintiffs' complaint does not set forth facts sufficient to implicate S&D for failure to include requisite FDCPA notices pursuant to 15 U.S.C. §§ 1692e(11) and 1692g(a). S&D *did* include the notices in its letters; the problem is that some of the information (the debt, additional charges, etc.) was incorrect or misleading. These transgressions may be redressed via other provisions of the FDCPA.

### Conclusion

For the above-assigned reasons, the court finds that plaintiffs' complaint, as amended, fails to state a cognizable or plausible claim for relief against S&D under state law and for violations of 15 U.S.C. §§ 1692e(11) and 1692g. Conversely, plaintiffs have alleged sufficient facts to raise a reasonable expectation that discovery will reveal evidence to support the elements of their remaining FDCPA claims against S&D. *Twombly, supra*. Accordingly,

IT IS RECOMMENDED that defendant, Shapiro & Daigrepont, LLC's motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 15], be GRANTED IN PART, and that plaintiffs' state law tort and LUTPA claims and their FDCPA claims asserted under 15 U.S.C. §§ 1692e(11) and 1692g(a) only be DISMISSED, with prejudice, as to said defendant.

IT IS FURTHER RECOMMENDED that the motion to dismiss [doc. # 15] otherwise be

DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 10th day of June 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE